IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **RODNEY GATSON,** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| v. § | Civil Action No. 4:22-cv-11-SDJ-KPJ | |
| § | | |
| **WILSHIRE COMMERCIAL** § | | |
| **CAPITAL LLC** *doing business as* § | | |
| **WESTLAKE FINANCIAL SERVICES** § | | |
| *et al.*, § | | |
| § | | |
| **Defendants.** | | |

**ORDER AND REPORT AND RECOMMENDATION**
<u>**OF UNITED STATES MAGISTRATE JUDGE**</u>

The following motions are pending before the Court:

1. Defendant Wilshire Commercial Capital LLC d/b/a Westlake Financial Services' ("Westlake") Motion to Dismiss (Dkt. 17), to which Plaintiff Rodney Gatson ("Plaintiff") filed a response (Dkt. 18), and Westlake filed a reply (Dkt. 19).

2. Defendant Quality Recovery Services, Inc.'s ("Quality") Motion to Dismiss (Dkt. 20), to which Plaintiff filed a response (Dkt. 21), and Quality filed a reply (Dkt. 29).

3. Defendant TX Motors of North Richland Hills' ("AutoNation CDJR") Motion to Dismiss (Dkt. 27), to which Plaintiff did not respond.[1]

4. Plaintiff's Motion of Opposition to Westlake and Quality's Motions to Dismiss and Motions for Summary Judgment ("Plaintiff's Motion") (Dkt. 22), to which Westlake and Quality filed responses (Dkts. 28, 30).

Upon consideration, the Court recommends the Motions to Dismiss (Dkts. 17, 20, 27) be **GRANTED IN PART** and Plaintiff's Motion (Dkt. 22) be **DENIED AS MOOT**.

---

[1] Together, the Motions to Dismiss will be referenced as the "Motions to Dismiss."

1

### I. BACKGROUND

Plaintiff purchased and financed a 2014 Dodge Charger (the "Vehicle") from AutoNation CDJR pursuant to a Retail Installment Sales Contract ("RISC"). *See* Dkt. 16 at 4. The RISC indicates the Vehicle was sold to Plaintiff by AutoNation CDJR as "seller/creditor" and that AutoNation CDJR simultaneously assigned its interest in the RISC to Westlake. *See* Dkt. 16-16. Plaintiff alleges the cost of the Vehicle to Plaintiff was $27,110.56, broken out as follows:

- $3,730, paid upfront, including a $2,000 trade-in credit and $1,730 cash;
- $12,775.65 financed at a 22.49% annual percentage fee; and
- $10,604.91 finance charge.

*See* Dkt. 16 at 4–5; *see also* Dkt 16-16 (RISC). Plaintiff alleges Westlake and AutoNation CDJR knowingly and willingly doubled the price of the Vehicle, presented Plaintiff with false and deceptive forms, and concealed the true nature of the transaction as a consumer credit contract. *See id.* at 5. According to Plaintiff, the Vehicle was eventually repossessed by Quality at Westlake's direction. *See* Dkt. 16 at 9.

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this civil action on January 6, 2022. *See* Dkt. 1. Plaintiff amended his complaint as a matter of right before any Defendant appeared; Plaintiff's Amended Complaint (Dkt. 16) is the live complaint in this matter. Plaintiff's Amended Complaint alleges the following claims: fraud in factum against each Defendant; violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, against Westlake and AutoNation CDJR; and violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, against each Defendant. *See* Dkt. 16.

Defendants each moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Westlake's Motion to Dismiss was filed on February 11, 2022. *See* Dkt. 17. Plaintiff filed

a response, *see* Dkt. 18, and Westlake filed a reply, *see* Dkt. 19. Quality's Motion to Dismiss was filed on February 22, 2022. *See* Dkt. 20. Plaintiff filed a response, *see* Dkt. 21, and Quality filed a reply, *see* Dkt. 29. AutoNation CDJR's Motion to Dismiss was filed on March 18, 2022. *See* Dkt. 27. Plaintiff did not file a response to AutoNation CDJR's Motion to Dismiss.

Plaintiff's Motion was filed on February 28, 2022, as an additional response to Quality's Motion to Dismiss. *See* Dkt. 22 at 2 ("The MOTION to Opposition relates to [Quality's] Motion to Dismiss."). Plaintiff's Motion attempts to controvert the facts set out in Quality's Motion to Dismiss and requests the Court "issue an order dismissing Defendants' Motion to Dismiss for Failure to State a Claim and granting Plaintiff's Motion for Summary Judgement." *See generally id.* Westlake and Quality both filed responses in opposition. *See* Dkts. 28, 30.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are viewed with disfavor, the court must accept as true all well-pleaded facts, "even if doubtful or suspect," contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020); *see Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *See id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

When considering a motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### III. ANALYSIS

#### A. Fraud in Factum

To state a claim for fraud under Texas law, a plaintiff must plead facts showing:

> (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result.

*CBE Group v. Lexington Law Firm*, 993 F.3d 346, 350 (5th Cir. 2021) (citing *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018)). Liability may also attach based on a failure to disclose material information if a party has a duty to disclose certain information and fails to disclose it. *Id.* at 353 (quoting *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019)). In such cases, the plaintiff must plead:

> (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the nondisclosure, which resulted in injury.

*Id.* In either case, federal law requires the plaintiff to plead facts showing, at a minimum, the "who, what, when, where, and how of the alleged fraud." *Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 820 (5th Cir. 2020) (per curiam) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)); *see* FED. R. CIV. P. 9(b) ("In alleging fraud

4

or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Plaintiff's Amended Complaint contains the following allegations with respect to his fraud claims: (1) Defendants failed to "state the name and address of all parties to the transaction, misrepresented the entire transaction and caused the Plaintiff to enter into the transaction without the opportunity to accurately realize the risks, duties or obligations incurred"; (2) AutoNation CDJR "failed to show Plaintiff where the principle [sic] went down from the down payment provided by the Plaintiff but instead added it to the $23,380.56 . . . to swindle more money out of the Plaintiff"; (3) a representative of AutoNation CDJR forged Plaintiff's signature; (4) AutoNation CDJR sold Plaintiff the Vehicle, even though allegedly it "should not have been sold in the condition that it was in"; and (5) and, as a result, Plaintiff lost his vehicle.[2] *See* Dkt. 16 at 6–7.

Plaintiff's allegations are not sufficient to state a claim for relief, as Plaintiff failed to allege facts showing that any Defendant: (a) made a material misrepresentation that was false, or (b) breached its duty to disclose material information. Plaintiff's allegation that Defendants "misrepresented the entire transaction" certainly does not set forth the "who, what when, where, and how" of the alleged misrepresentation, as Plaintiff fails to articulate what was said (or not said) by Defendants, which resulted in the "entire transaction" being misrepresented. Likewise, Plaintiff's allegations that Defendants failed to "state the name and address of all parties to the transaction" does not suffice, as Plaintiff has not alleged which parties, if any, were omitted from the transaction, whether such information would have been material to Plaintiff's decision to enter the contract, or whether Defendants had a duty to divulge such information. The same analysis

---

[2] Plaintiff's allegations also reference a non-party, Danielle Foster. *See* Dkt. 16 at 7. Ms. Foster was not a party to the RISC, *see* Dkt. 16-16, and it is unclear from Plaintiff's allegations what connection, if any, Ms. Foster has to Plaintiff's claims in this case.

5

applies to Plaintiff's allegation that Defendants failed to articulate the financing terms in a more precise way. Finally, Plaintiff fails to provide any specifics regarding the purported forgery of his signature and, in any event, does not deny that he purchased and financed the Vehicle. Accordingly, the Court finds Plaintiff has failed to state a claim for fraud.

### B. TILA

Plaintiff alleges Westlake and AutoNation CDJR violated the following statutory provisions within the TILA: 15 U.S.C. § 1605(a), which defines "service charge" and provides instruction as to the types of fees that may and may not be included in a finance charge; 15 U.S.C. § 1622(2), which does not exist; and 15 U.S.C. § 1635(a), which requires creditors to provide notice of a debtor's rescission rights in certain transactions. *See* Dkt. 16 at 7–8. Plaintiff's allegations are insufficient to support relief under any of the foregoing claims.

First, Plaintiff's claims under Section 1605 fail because Plaintiff failed to plead a cognizable violation thereof. Plaintiff alleges Westlake and AutoNation CDJR violated Section 1605 by failing to disclose the definition of a "service charge," failed to make other "mandatory disclosures," and misrepresented that Plaintiff "needed more money down" to qualify for financing. *See* Dkt. 16 at 7–8. However, Section 1605—which, as stated, merely defines "finance charge" and the costs that may be included in the finance charge—does not, itself, impose mandatory disclosure obligations on creditors aside from instructing that certain charges shall be disclosed in the finance charge. *See* 15 U.S.C. § 1605. Plaintiff does not allege the finance charge in the RISC included improper charges. Plaintiff's allegations, therefore, are insufficient to state a violation of Section 1605.

Plaintiff also alleges AutoNation CDJR "knows that under 'TILA' . . . credit and cash cannot be in the same transaction pursuant to [Section] 1605a." *See id.* at 8. This allegation is

6

insufficient to state a violation of Section 1605 because Section 1605 does not prohibit the utilization of cash and credit in the same transaction. *See* 15 U.S.C. § 1605.

Second, Plaintiff cannot state a claim for relief under Section 1622 because it does not exist. To the extent Plaintiff intended to assert a claim under Section 1662(2), *see* Dkt. 18 at 11, the Court finds Plaintiff's claim likewise fails. Section 1662(2) provides: "No advertisement to aid, promote, or assist directly or indirectly any extension of consumer credit may state . . . (2) that a specified downpayment is required in connection with any extension of consumer credit, unless the creditor usually and customarily arranges downpayments in that amount." 28 U.S.C. § 1662(2). Plaintiff has not alleged that any Defendant advertised a specific downpayment was required in connection with any extension of consumer credit. Rather, Plaintiff alleges Westlake advertises "down payments as low as $0" and, further, that Westlake *did not* advertise a $3,730 downpayment could be required to receive financing. *See* Dkt. 16 at 8.

Third, Plaintiff's claim under Section 1635(a) fails because the disclosure obligation imposed by Section 1635(a) does not generally apply to the sale of motor vehicles. Section 1635(a) provides that a seller must disclose the buyer's rescission rights in "any consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended . . . ." 15 U.S.C. § 1635(a). In this case, Plaintiff's allegations relate solely to his purchase of the Vehicle, which Plaintiff does not allege gave rise to a security interest in Plaintiff's principal dwelling. Because Section 1635(a) does not apply to the RISC and Plaintiff's purchase of the Vehicle, Plaintiff's claim under Section 1635(a) fails. *See Walker v. U.S. Bank*, No. 3:21-cv-758, 2021 WL 5701498, at *3, *R. & R. adopted*, 2021 WL 5630922 (N.D. Tex. Nov. 30, 2021) (dismissing the plaintiff's rescission claim because the TILA rescission

provisions did not apply to the plaintiff's "purchase of a Chevrolet Silverado, a vehicle which does not qualify as a 'principal dwelling'"). Accordingly, the Court finds Plaintiff failed to state a claim for relief under the TILA.

### C. FDCPA

To state a claim under the FDCPA, Plaintiff was required to allege facts as to each Defendant showing: (1) Plaintiff was the object of collection activity arising from a consumer debt; (2) Defendant is a debt collector defined by the FDCPA; and (3) Defendant engaged in an act or omission prohibited by the FDCPA. *See Pilkington v. LTD Fin. Servs., LP*, No. 6:19-cv-422, 2020 WL 10045989, at *2 (E.D. Tex. Feb. 11, 2020). Plaintiff failed to do so with respect to each Defendant.

As an initial matter, Plaintiff failed to plead any factual allegations showing AutoNation CDJR violated the FDCPA. *See* Dkt. 16 at 8–9. While Plaintiff alleges AutoNation CDJR "failed to disclose [it was a] debt collector[] in the first initial communication," *see id.* at 8, Plaintiff has not alleged facts showing AutoNation CDJR engaged in any debt collection activities or otherwise engaged in post-sale communications with respect to financing the Vehicle. Plaintiff's FDCPA claims against AutoNation CDJR cannot survive absent allegations showing that AutoNation CDJR engaged in collection activity with respect to the RISC.

Second, Plaintiff's claims against Westlake fail because Plaintiff's Amended Complaint and the attachments thereto indicate Westlake is not a "debt collector" under the FDCPA. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Relevant here, the FDCPA explicitly

excludes from the definition, *inter alia,* those who collect or attempt to collect debt originated by such person or debt obtained by such person as a secured party in a commercial credit transaction involving the creditor that offered or extended the credit. 15 U.S.C. § 1692a(6)(F); *see* 15 U.S.C. § 1692a(4). Under this exception, courts have concluded the term "debt collector" does not include lenders or assignees of debt, provided the debt was not in default when it was assigned. *Coleman v. Devos*, No. 3:19-cv-2417, 2020 WL 9219408, at *5 (N.D. Tex. Dec. 28, 2020) (citation omitted), *R. & R. adopted sub nom. Coleman v. Cardona*, 2021 WL 1169149, *aff'd*, 857 F. App'x 192 (5th Cir. 2021) (per curiam). In this case, the RISC indicates Westlake obtained the debt and resulting security interest from AutoNation CDJR on the date of sale. *See* Dkt. 16-16. Accordingly, Westlake is not a debt collector with respect to the Vehicle loan and, therefore, based on the facts alleged, Westlake cannot be liable under the FDCPA for collection activities related to such loan.

Finally, Plaintiff failed to allege facts to support Quality's liability under the FDCPA. With respect to Quality, Plaintiff alleges as follows:

> [Quality] performed the Plaintiffs repossession which is in violation 15 U.S. Code § 1692d(1).
>
> [Quality] violated 15 U.S.C. § 1692f(6)(A) which prohibits debt collectors from taking . . . any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest no.

*See* Dkt. 16 at 9. These conclusory assertions are not entitled to a presumption of truth and cannot, by themselves, support Plaintiff's claims for relief against Quality under the FDCPA. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.). Accordingly, the Court finds Plaintiff failed to state a claim for relief under the FDCPA.

### D. Leave to Amend

Generally, a *pro se* plaintiff should be allowed to amend his complaint before it is dismissed under Rule 12. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Id.* at 768. Because this is the Court's first opportunity to assess Plaintiff's claims, the Court finds Plaintiff should be permitted an opportunity to amend his fraud claims and his FDCPA claims asserted against AutoNation CDJR and Quality. However, the Court finds any opportunity to amend should not extend to Plaintiff's TILA claims and his FDCPA claims against Westlake, as the Court finds Plaintiff pleaded his best case as to those claims. Indeed, Plaintiff failed to allege any cognizable injury under the TILA, and the pleadings establish Westlake cannot be held liable under the FDCPA as a matter of law.

### E. Plaintiff's Motion

Because the Court recommends the Motions to Dismiss be granted in part and because the Court recommends Plaintiff be granted leave to amend his complaint, in part, the Court finds Plaintiff's Motion should be denied as moot.

## IV.   RECOMMENDATION

For the foregoing reasons, the Court recommends the Motions to Dismiss (Dkts. 17, 20, 27) be **GRANTED IN PART** as follows: Plaintiff's TILA claims against Defendants and Plaintiff's FDCPA claims against Westlake be **DISMISSED WITH PREJUDICE**. Plaintiff's fraud claims against Defendants and FDCPA claims against AutoNation CDJR and Quality be **DISMISSED WITHOUT PREJUDICE** and with leave to amend. The Court further recommends that Plaintiff be granted fourteen (14) days to file an amended complaint as to such claims.

The Court further recommends Plaintiff's Motion (Dkt. 22) be **DENIED AS MOOT**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). A party is entitled to a de novo review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 29 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

## V. ORDER

**IT IS ORDERED** that, in addition to serving Plaintiff by certified mail, return receipt requested, the Clerk's Office shall email this Order and Report and Recommendation to Plaintiff at rodneygatson19@gmail.com.

**So ORDERED and SIGNED this 31st day of August, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE