IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **RODNEY GATSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-cv-11-KPJ** |
| | § | |
| **WILSHIRE COMMERCIAL** | § | |
| **CAPITAL LLC** *doing business as* | § | |
| **WESTLAKE FINANCIAL SERVICES** *et* | § | |
| *al.***,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>OPINION AND ORDER</u>

The following motions are pending before the Court:

1. Plaintiff Rodney Gatson's ("Plaintiff") "Motion for Sanctions Against Wilshire Commercial Capital LLC d/b/a Westlake Financial Services" (the "Westlake Sanctions Motion") (Dkt. 74), to which Defendant Wilshire Commercial Capital LLC d/b/a Westlake Financial Services ("Westlake") filed a response (Dkt. 79);

2. Plaintiff's "Motion for Sanctions Against AutoNation" (the "AutoNation CDJR Sanctions Motion," and together with the Westlake Sanctions Motion, the "Sanctions Motions") (Dkt. 83), to which Defendant TX Motors of North Richland Hills ("AutoNation CDJR") filed a response (Dkt. 85), Plaintiff filed a reply (Dkt. 86), and AutoNation CDJR filed a sur-reply (Dkt. 87); and

3. Plaintiff's "Motion to Strike Defendant's AutoNation Sur-Reply to Plaintiff's Motion for Sanctions" (the "Motion to Strike") (Dkt. 88), to which AutoNation CDJR filed a response (Dkt. 90).

For the reasons that follow, the Sanctions Motions (Dkts. 74, 83) and the Motion to

Strike (Dkt. 88) are **DENIED**.

# I.   BACKGROUND

## A.  Factual Background and Procedural History

On January 6, 2022, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed a complaint against AutoNation CDJR, Westlake, and Quality Recovery Service Inc. ("Quality," and together with AutoNation CDJR and Westlake, "Defendants"). *See* Dkt. 1. On January 14, 2022, before any Defendant entered the case or any summons was returned, Plaintiff filed two motions for contempt requesting the Court hold Defendants in contempt. *See* Dkts. 9–10. On January 27, 2022, Plaintiff filed the First Amended Complaint (Dkt. 12) as a matter of right before any Defendant appeared. *See* Dkt. 12.

On February 7, 2022, Plaintiff filed the Second Amended Complaint (Dkt. 16), wherein he alleged the following claims: fraud in the factum against each Defendant; violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, against Westlake and AutoNation CDJR; and violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, against each Defendant. *See generally* Dkt. 16.

In February and March 2022, all three Defendants respectively filed motions to dismiss (Dkts. 17, 20, 27), and Plaintiff filed a "Motion of Opposition to Westlake and Quality's Motions to Dismiss and Motions for Summary Judgment" ("Plaintiff's Opposition Motion") (Dkt. 22). On April 11, 2022, the Court denied Plaintiff's motions for contempt (Dkts. 9–10), as discovery had not yet commenced in the matter and the Court had not yet held a Rule 16 Management Conference or entered a Scheduling Order. *See* Dkt. 32.

On August 31, 2022, the Court recommended the motions to dismiss (Dkts. 17, 20, 27) be granted in part as follows: Plaintiff's TILA claims against Defendants and Plaintiff's FDCPA claims against Westlake be dismissed with prejudice; Plaintiff's fraud claims against Defendants

and FDCPA claims against AutoNation CDJR and Quality be dismissed without prejudice, with leave to amend; and Plaintiff's Opposition Motion (Dkt. 22) be denied as moot. *See* Dkt. 35 at 10. On September 12, 2022, Plaintiff filed the Third Amended Complaint (Dkt. 37), which was stricken for failure to comply with Rule 15(a)(2) of the Federal Rules of Civil Procedure. *See* Minute Entry for September 26, 2022. On September 26, 2022, the Memorandum Adopting the Report and Recommendation (Dkt. 38) was entered, dismissing Plaintiff's claims as follows: Plaintiff's TILA claims against Defendants and Plaintiff's FDCPA claims against Westlake were dismissed with prejudice; Plaintiff's fraud claims against Defendants and FDCPA claims against AutoNation CDJR and Quality were dismissed without prejudice, with leave to amend; and Plaintiff's Opposition Motion (Dkt. 22) was denied as moot. *See* Dkt. 38.

On September 28, 2022, Plaintiff filed the Fourth Amended Complaint (the "Fourth Amended Complaint") (Dkt. 43), wherein Plaintiff alleges he intended to purchase a 2014 Dodge Charger (the "Vehicle") from AutoNation CDJR on August 26, 2020, under a Retail Installment Sales Contract ("RISC"). See *id.* at 3.[1] Plaintiff alleges he intended to finance the Vehicle and "only wanted to use the trade-in cash value to cover the costs of the down payment." *Id.* Plaintiff alleges "Jake," a sales agent for AutoNation CDJR, knew Plaintiff only wanted to use the trade-in value for the costs of the down payment. *See id.* Plaintiff alleges he filed an application for financing, which was conducted by multiple financial institutions including Westlake, to find the most favorable terms. *See id.* at 3–4. Plaintiff alleges AutoNation CDJR gave Plaintiff a quote on August 25, 2020, on the trade-in value for his 2015 Nissa Altima, and "[t]he total price came out to $1,300 which contradicts the number stated in the RISC for the 2016 [D]odge [C]harger." *Id.* at 4. Plaintiff further alleges that on August 26, 2022, the RISC that was signed stated the price as

---

[1] The Court refers to CM/ECF pagination rather than internal pagination for all citations.

$2,000, "[w]hich made it unclear as to what the true price of the trade-in was." *Id.* Plaintiff alleges

that Jake "never mentioned to Plaintiff that they were using someone else's private information,

including but not limited to a social security number during the application process, until after the

application process was done," and Plaintiff asserts the application used the information of his

friend, Danielle Foster, leading to Plaintiff obtaining less favorable terms. *See id.* Plaintiff alleges

that Jake never disclosed the name or address of the bank that was to finance the purchase of the

Vehicle, nor did he disclose the towing company's name or address that would be involved in the

event of a default. *See id.* at 5. Plaintiff alleges that "Jake only mentioned the bank was going to

be Westlake after the con[clusion] of the transaction[,] [w]hich[,] in turn[,] did not allow [Plaintiff]

to fully get a view of who he was doing business with." *Id.* Plaintiff asserts "full disclosure" is a

legal requirement that "the entire truth be told before a contract is signed so that all transacting

parties are fully aware of the consequences of their decision," and Plaintiff asserts he "would likely

not have entered the transaction, due to the CFPB having a court order against Westlake for false

and deceptive trade practices that were still in effect at the time of Plaintiff's transaction." *Id.*

Plaintiff further alleges AutoNation CDJR "had the 2014 Dodge Charger posted on their

site and advertised it as ready for sale, which made [Plaintiff] come to AutoNation CDJR and

inquire about the [V]ehicle." *Id.* Plaintiff alleges the Vehicle "was not ready for sale yet was still

sold to . . . Plaintiff." *Id.* at 5–6. Plaintiff alleges the advertising misrepresented the "readiness of

the [V]ehicle and by doing so . . . [P]laintiff was led to believe that the car was in good condition[,]

which ultimately led to the purchase of the [V]ehicle." *Id.* at 6. Plaintiff alleges that around

October 30, 2020, Plaintiff took the Vehicle to AutoNation CDJR's service center, and "Danielle,"

a representative at the service center, informed Plaintiff that "AutoNation CDJR should have never

sold [Plaintiff] the [V]ehicle, [which] further supports the concealment of material facts and

misrepresentation of the [V]ehicle." *Id.* at 6 (internal quotation marks omitted). Plaintiff alleges Defendants prevented Plaintiff from receiving favorable financing from a rival and harmed Plaintiff's reputation by making several inquiries regarding Plaintiff's credit. *See id.* at 6–7. Plaintiff alleges Defendants also used a "strategy" to make "[P]laintiff wait for long periods and delay the transaction to make . . . [P]laintiff more receptive to Jake's advice and to discourage . . . [P]laintiff from asking Jake too many questions because he needed to finish the transaction and drive away with his new car." *Id.* at 7. Plaintiff alleges he received a notice from Westlake on September 16, 2020, informing Plaintiff that Westlake had purchased Plaintiff's RISC. *See id.* Plaintiff alleges AutoNation CDJR conducted multiple credit applications under different purchase contracts with different down payment amounts, interest rates, and parties to the contracts. *See id.* at 8. Plaintiff alleges that in October 2020, he was informed by Westlake of a Guaranteed Auto Protection ("GAP") waiver for the Vehicle, which would cover the full loan amount in the event of a total loss of the Vehicle; Plaintiff alleges that he relied on this statement. *See id.* Plaintiff alleges Westlake has yet to produce the RISC dated October 6, 2020, which included the GAP waiver. *See id.* Plaintiff further alleges AutoNation CDJR and Westlake forged Plaintiff's signature. *See id.* at 9.

Plaintiff alleges that after he fell behind on his payments, he received documents titled "Payment History," which listed his payment history as follows:

- 9,282.65 FND CASH SALES/ ADVANCE AMOUNT (Transaction Date: August 26th, 2020)

- $3,493.00 FND SERVICE CONTRACT RETAIL (Transaction Date: August 26th, 2020)

- $12,775.65 LOAN RECEIVABLES (Transaction Date: August 26th, 2020)

*Id.* at 10. Plaintiff alleges he made timely payments but eventually fell behind. *See id.* Plaintiff alleges he received another document titled "Payment History," which shows his payments went to interest rather than principal, leading to his inability to pay off the Vehicle. *See id.* at 10–11. Plaintiff alleges Westlake retained Quality to collect the Vehicle by self-help repossession, which occurred on January 4, 2022. *See id.* at 11. After the repossession of the Vehicle, Plaintiff asserts he sought "to redeem the [V]ehicle." *Id.* Plaintiff asserts that "Tracy Bigram," an agent of Westlake, misrepresented facts and confused Plaintiff by informing him that he could "[r]einstate his Vehicle by paying the full loan balance which is never mentioned inside of the RISC." *Id.* Plaintiff alleges he spoke with "Jason," a manager for Quality, on January 11, 2022, and Quality removed the Vehicle from its property without providing Plaintiff an opportunity to retrieve his personal property from inside the Vehicle. *See id.* at 12. Plaintiff alleges Jason provided Plaintiff's belongings in a trash bag and "compelled Plaintiff to sign a release of property form." *Id.* at 13. Plaintiff alleges Westlake informed Plaintiff of a private sale of the Vehicle on January 20, 2022. *See id.* at 14.

Plaintiff alleges Defendants AutoNation CDJR and Westlake fraudulently induced Plaintiff to agree to the RISC and asserts AutoNation CDJR acted as an agent of Westlake. *See id.* at 15–16. Plaintiff further alleges he was ignorant of the false representations AutoNation CDJR made on behalf of Westlake and that Plaintiff relied on the truth of the representations made to him when he purchased the Vehicle. *See id.* at 16. Plaintiff alleges he is entitled to actual and consequential damages of $37,582.19, an injunction against Defendants' wrongful conduct, and $100,000 in punitive damages. *See id.* at 17, 20. Plaintiff further alleges an FDCPA claim against Quality. *See id.* at 17–20.

On December 22, 2022, the parties filed the Rule 26(f) Meeting Report (Dkt. 54). In the Rule 26(f) Meeting Report (Dkt. 54), the parties jointly consented to trial before the undersigned. *See id.* at 5. On January 23, 2023, the Court held the Rule 16 Management Conference (Dkt. 69). On February 10, 2023, U.S. District Judge Sean D. Jordan entered the Order of Reference (Dkt. 77), referring the case to the undersigned for all further proceedings, including trial, entry of final judgment, and all post-judgment hearings in accordance with 28 U.S.C. § 636(c), and the consent of the parties. *See* Dkt. 77. On the same day, the Court entered the Scheduling Order (Dkt. 78).

### B.  Westlake Sanctions Motion

On January 30, 2023, Plaintiff filed the Westlake Sanctions Motion (Dkt. 74), arguing Westlake "has wil[l]fully and knowingly failed to produce certain documents that are essential to the case and are in [Westlake's] possession, custody, or control . . . including but not limited to billing statements[,] [c]orrespondences sent to both Quality and AutoNation regarding Plaintiff, and title of the [V]ehicle subject to this lawsuit." Dkt. 74 at 2. Plaintiff further asserts this is a "calculated and malicious failure" and "Defendant's actions constitute a gross violation of Rule 37(c)(1) of the Federal Rules of Civil Procedure, which provides for the imposition of sanctions for failure to disclose or produce discoverable material." *Id.* Plaintiff requests the Court enter an order imposing sanctions against Westlake, requiring Westlake to produce the allegedly withheld documents, and precluding Westlake from introducing any evidence at trial that is related to the withheld documents. *See id.* Plaintiff filed a supporting affidavit, which asserts, "I have made a request to confer about these documents on January 25th[,] 2023, and [Westlake] has not responded as of today's date which is January, 30th, 2023." Dkt. 74-1 at 2.

On February 13, 2023, Westlake filed its response (Dkt. 79), arguing Plaintiff failed to properly meet and confer as required under Eastern District of Texas Local Rule CV-7 because Plaintiff failed to both meet the substantive component, i.e., contacting the opposing party before filing the Westlake Sanctions Motion (Dkt. 74), and the procedural component, i.e., including a certificate of conference. *See* Dkt. 79 at 1–3. Westlake further argues it has complied with its duty in producing its initial disclosures and "believes in good faith that these disclosures represent the 'individuals,' 'documents[,]' and 'tangible things' that Westlake has in its possession, custody, or control that it may use to support its claims or defenses in accordance with Rule 26." Dkt. 79 at 3. In support, Westlake includes the following: an email from Westlake's counsel, James R. Liebler ("Mr. Liebler"), to Plaintiff dated January 30, 2023, requesting Plaintiff advise Westlake of the production issue and representing to Plaintiff that Mr. Liebler was out of office the previous week, Dkt. 79-1 at 2; and an email exchange between Westlake and Plaintiff referencing initial disclosures, *see* Dkt. 79-2.

### C.  AutoNation CDJR Sanctions Motion and Plaintiff's Motion to Strike

On March 16, 2023, Plaintiff filed the AutoNation Sanctions Motion (Dkt. 83), arguing AutoNation CDJR "failed to provide a proper verification with their discovery responses." Dkt. 83 at 2. Plaintiff further argues he sent several emails to AutoNation CDJR's counsel, M. Grant Johnston ("Mr. Johnston"), requesting he "comply with the court's order on February 24th, 2023 and on March 10th[,] 2023" by providing "a proper oath or affirmation of the discovery interrogatories." *Id.* Plaintiff asserts Mr. Johnston responded by email on February 24, 2023, that they were complying with the rules, but Plaintiff argues "Defendant failed to supplement their discovery responses as promised by March 13th, 2023, which is a clear violation of the Federal Rules of Civil Procedure rule 33(B)(3)" because it requires "that the answering party . . . respond

under oath or affirmation." *Id.* Plaintiff requests that the Court impose sanctions against AutoNation CDJR and "order a competency test on [Mr. Johnston] due to his failure to comply with the court's orders and the federal rules." *Id.* at 3. In support, Plaintiff includes the following: a "Certification" dated March 16, 2023, *see* Dkt. 83-1; an email chain between Plaintiff and Mr. Johnston titled "Urgent Response Required – Discovery Request Deadline Expired" dated February 24, 2023, *see* Dkt. 83-2; and an email exchange between Plaintiff and Mr. Johnston dated March 10, 2023, regarding the passing of Mr. Johnston's uncle, *see* Dkt. 83-3.

On March 23, 2023, AutoNation CDJR filed its response (Dkt. 85), arguing its discovery responses were due thirty days from the issuance of the Scheduling Order (Dkt. 78) on February 10, 2023. Dkt. 85 at 4. Thus, AutoNation CDJR contends that its responses, which were tendered on March 10, 2023, were timely. *See id.* AutoNation CDJR further argues that its lack of verification was due to the passing of Mr. Johnston's uncle, whose death obligated Mr. Johnston "to be out-of-town on the day the discovery responses were due." *Id.* at 5. As such, AutoNation CDJR provided the verification on March 17, 2023. *Id.* AutoNation CDJR further argues that "there is no basis to disregard [AutoNation CDJR's] discovery responses when the alleged failure to provide a verification with its Interrogatory Responses was promptly cured," and Rule 33(b)(3) of the Federal Rules of Civil Procedure would ironically require the Court to disregard AutoNation CDJR's interrogatory responses prejudicing Plaintiff. *See id.* AutoNation CDJR further argues, "Plaintiff filed his baseless Motion with the intent to exploit a personal tragedy affecting [Mr. Johnston] to gain an undue advantage in this case . . . ." *Id.* at 7. In support, AutoNation CDJR includes the following: Answers to Interrogatories, Responses to Request for Production, and Responses to Request for Admissions, *see* Dkt. 85-1; and a sworn Verification dated March 17, 2023, *see* Dkt. 85-2.

On March 27, 2023, Plaintiff filed a reply (Dkt. 86), arguing discovery responses were due February 10, 2023, the verification sent by AutoNation CDJR is not proper, and, regardless of whether Plaintiff has alleged prejudice as there was a purported verification sent on March 17, 2023, AutoNation CDJR violated Rule 33(b)(3) of the Federal Rules of Civil Procedure. *See* Dkt. 86 at 1–5. In support, Plaintiff includes a document titled, "Example of How to Complete an Acknowledgement Certificate." Dkt. 86-2.

On April 4, 2023, AutoNation CDJR filed its sur-reply (Dkt. 87), arguing Rule 37 allows for discovery sanctions for failing to answer or respond and requires a certificate of conference affirming that there was an attempt to confer. *See* Dkt. 87 at 4. AutoNation CDJR argues Rule 37 does not allow sanctions for a lack of the attachment of verification and, regardless, the lack of verification was timely cured. *See id.* at 4–5. AutoNation CDJR further argues Plaintiff has not provided any proof that AutoNation CDJR acted in bad faith or willfully, but rather takes issue with Mr. Johnston's response that he was out of town for a funeral. *See id.* at 5–6.

On April 6, 2023, Plaintiff filed the Motion to Strike (Dkt. 88) arguing "[AutoNation CDJR's] Sur-Reply is meritless and contains no new or significant arguments that would warrant a response from Plaintiff." *Id.* at 2. Plaintiff further argues a response to the sur-reply (Dkt. 87) would be a "waste of judicial resources" and AutoNation CDJR has "demonstrated a complete disregard of the legal requirements of this Court" because AutoNation CDJR failed to "include the notary's handwritten actual date that the signer personally appeared before the notary and the notary completed the notarization, regardless of the document date." *Id.* at 2–3.

On August 24, 2023, AutoNation CDJR filed a response (Dkt. 90) to the Motion to Strike (Dkt. 88) arguing Plaintiff cannot show the filing of the sur-reply (Dkt. 87) was made in bad faith or that AutoNation CDJR has engaged in dilatory tactics. *See* Dkt. 90 at 6–7. AutoNation CDJR

further argues "Dustin Osborne," the general manager of AutoNation CDJR, swore under oath before a registered notary that he read AutoNation CDJR's interrogatory responses, and the facts stated therein were true and correct to the best of his knowledge. *See id.* at 7. AutoNation CDJR further argues that Rule 33 does not require a county name on a verification, and Plaintiff provides no legal support for such a requirement. *See id.*

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 33 governs the submission and response of interrogatories between parties providing, *inter alia*, the following:

**(b) Answers and Objections.**

**(1)** *Responding Party***.** The interrogatories must be answered:

(A) by the party to whom they are directed; or

(B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.

**(2)** *Time to Respond***.** The responding party must serve its answers and any objections within 30 days after being served with the interrogatories. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

**(3)** *Answering Each Interrogatory***.** Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

**(4)** *Objections***.** The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.

**(5)** *Signature*. The person who makes the answers must sign them, and the attorney who objects must sign any objections.

FED. R. CIV. P. 33(b). Accordingly, Rule 33(b) requires parties to comply "by submitting verifications under oath with regard to all of [their] responses to the interrogatories . . . ." *W.H.*

*Wall Fam. Holdings LLLP v. CeloNova Biosciences, Inc.*, No. 1:18-CV-303-LY, 2020 WL 1644003, at *4 (W.D. Tex. Apr. 2, 2020) (collecting cases).

Rule 37 governs parties' failures to make disclosures or to cooperate in discovery, as well as sanctions for such failures. *See* FED. R. CIV. P. 37. Sanctions under Rule 37 may be issued for failure to attend depositions, serve answers to interrogatories, respond to a request for inspection, failure to comply with court orders, failure to preserve electronically stored information, and failure to participate in framing a discovery plan. *See id.* Federal courts "ha[ve] broad discretion under Rule 37(b) to fashion remedies suited to the misconduct"; however, this discretion is limited, usually requiring a "finding of bad faith or willful misconduct to support the severest remedies under Rule 37(b)—striking pleadings or dismissal of a case." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (quotations and alterations omitted) (quoting *Pressey v. Patterson*, 898 F.2d 1021, 2021 (5th Cir. 1990)). "Lesser sanctions do not require a finding of willfulness." *Id.* (citing *Chilcutt v. United States*, 4 F.3d 1313, 1323 n.23 (5th Cir. 1993)). Additionally, Rule 37(c)(1) provides, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless . . . ." FED. R. CIV. P. 37(c)(1).

## III.   ANALYSIS

### A.  Westlake Sanctions Motion

Plaintiff moves to sanction Westlake under Rule 37(c)(1) for Westlake's purported failure to comply with Rule 26 of the Federal Rules of Civil Procedure. *See* Dkt. 74. In response, Westlake asserts it has complied with its duty in producing its initial disclosures, which it believes are in accordance with Rule 26. *See* Dkt. 79 at 3.

Westlake provides an email revealing Mr. Liebler sought to contact Plaintiff to inquire what issues Plaintiff believed were wrong with Westlake's production and advised Plaintiff that he was out of the office the previous week when Plaintiff allegedly attempted to confer with Westlake. *See* Dkt. 79-1 at 2. Rather than engaging in gross misconduct, Westlake appears responsive to Plaintiff's requests and avers it has complied with its initial disclosure requirement under Rule 26. At this time, Westlake has not sought to use any evidence that was not disclosed, so it is unclear what evidence Plaintiff seeks to be excluded from trial. *See Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003). Plaintiff appears to speculate that the requested documents are within Westlake's possession; however, there is no indication that Westlake withheld any documents. Thus, the Court cannot find that Plaintiff's assertions thereto merit discovery sanctions against Westlake under Rule 37(c)(1).

Furthermore, as Westlake argues, Plaintiff does not appear to have made a good faith effort to confer or attempt to confer with Westlake to resolve any discovery issue. *See* FED. R. CIV. P. 37(a)(1) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.").[2]

---

[2] While Local Rule CV-7(i) generally exempts *pro se* litigants from the "certificate of conference" requirement, *see* LOC. R. CV-7(i), it does not—and cannot—exempt them from complying with the certificate of conference requirement imposed by the Federal Rules of Civil Procedure. *See De La Vega v. San Juan Star, Inc.*, 377 F.3d 111, 116 (1st Cir. 2004) ("It is equally clear, however, that a district court cannot enforce its local rules in a way that conflicts with the Federal Rules of Civil Procedure." (citation omitted)); *see also Clark v. Richards*, No. 93-5119, 1994 WL 286159, at *5 (5th Cir. June 14, 1994) ("Federal Rule of Civil Procedure 83 provides that local rules may not conflict with the Federal Rules of Civil Procedure."). Rather, Local Rule CV-7(i) merely exempts *pro se* litigants from its *own* requirement that "all motions must be accompanied by a 'certificate of conference.'" *See* LOC. R. CV-7(i).

Accordingly, the Westlake Sanctions Motion (Dkt. 74) must be denied.

**B. AutoNation CDJR Sanctions Motion and Plaintiff's Motion to Strike**

First, the Court does not find it appropriate to strike the sur-reply (Dkt. 87). Plaintiff asserts that the sur-reply (Dkt. 87) is a waste of judicial resources and AutoNation CDJR shows a complete disregard for the Federal Rules of Civil Procedure. *See* Dkt. 88 at 2–3. But such assertions are baseless and belied by the emails sent to Plaintiff trying to cure the minor deficiency. And AutoNation CDJR provides further arguments in its sur-reply (Dkt. 87), responding to Plaintiff's arguments in the reply (Dkt. 86). Furthermore, as Plaintiff appears to misunderstand, the Local Rules do not provide Plaintiff an opportunity to respond to a sur-reply without leave of Court. *See* LOC. R. CV-7(b)(2) ("The court need not wait for the reply or sur-reply before ruling on the motion. Absent leave of court, no further submissions on the motion are allowed."). As such, there is no prejudice to Plaintiff, nor is there an articulable reason to strike the sur-reply (Dkt. 87). *See Thompson v. Tex. Dep't of Crim. Just.*, 67 F.4th 275, 283–84 (5th Cir. 2023) ("A 'motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.'" (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962))); *see also Shaw v. Ciox Health, LLC*, No. 19-14778, 2021 WL 411451, at *1 (E.D.

---

Rule 37 provides at the outset:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. *The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.*

FED. R. CIV. P. 37(a)(1) (emphasis added). It would make little sense to exempt any party, *pro se* or otherwise, from Rule 37's strictures. A certification that the movant has given notice and conferred in good faith with the opposing party regarding the substance of a Rule 37 motion is not form for the sake of form. Rather, the crux of the Rule is to provide notice of the impending Rule 37 motion for the purpose of commencing a dialogue between the parties regarding the discovery issue(s) in dispute, making it far more likely that the conflict will be resolved amicably—without judicial intervention. *See Wooten v. Fed. Express Corp.*, No. 4-cv-1196, 2004 WL 7334011, at *1 (N.D. Tex. Oct. 27, 2004) (conferring in "good faith" requires "a genuine attempt to resolve the discovery dispute through non-judicial means" (citation omitted)); *United States v. CRC Health Corp.*, No. 13-ca-117, 2014 WL 12638507, at 3 (W.D. Tex. Oct. 27, 2014) ("The purpose of requiring that the parties confer before seeking court intervention is to preserve judicial resources and ensure that the parties are comporting themselves professionally and in accordance with the Rules of Civil Procedure . . . .").

14

La. Feb. 5, 2021) ("[A] motion to strike should not be granted unless the moving party demonstrates prejudice.").

Moreover, regardless of whether the Court considers the sur-reply (Dkt. 87), sanctions against AutoNation CDJR are not appropriate. AutoNation CDJR provided discovery responses in the allotted time frame and, at the Rule 16 Management Conference, the Court clarified the parties had thirty days from the entry of the Scheduling Order (Dkt. 78) to respond to discovery requests. *See* Dkt. 69; Dkt. 78; FED. R. CIV. P. 26(d). Plaintiff also elevates the error of failing to include the verification—which was promptly cured—over any alleged prejudice. In fact, Plaintiff argues, "It is true that [AutoNation CDJR] later provided a document that purports to be a verification, but that does not erase the initial failure to comply with the Rule." Dkt. 86 at 2. But the brief delay, which was caused by the death of Mr. Johnston's family member, does not negate the fact that the verification was later cured (or that Plaintiff does not assert that prejudice resulted from this brief delay).[3] Additionally, as discussed above, Plaintiff does not certify he made a good faith effort to confer regarding the substance of the AutoNation CDJR Sanctions Motion, nor could his actions be considered a good faith effort to confer, with the opposing party's counsel. *See* FED. R. CIV. P. 37(a)(1).

Finally, the Court finds Plaintiff's abusive language towards Mr. Johnston to be highly problematic and possibly meriting sanctions. Plaintiff asserts Mr. Johnston should be ordered for a competency hearing grounded solely on his failure to "provide a proper verification with [the] discovery responses." Dkt. 83 at 2; *see also* Dkt. 83-3 at 1. But Mr. Johnston informed Plaintiff he would supplement the deficient responses as soon as he returned from the funeral. *See* Dkt. 83-3.

---

[3] Nor does the Court find the notarized verification missing the county from the form, though containing notarization and all other requisites, causes Plaintiff any prejudice or causes the verification to be defective to a level that rises anywhere near sanctionable conduct.

Nevertheless, Plaintiff took the extraordinary step to suggest Mr. Johnston requires a competency test. This behavior is unacceptable and could lead to the striking of Plaintiff's filings, as well as monetary sanctions, if it continues. *See Texas v. Florance*, No. 4:06-cv-510, 2008 WL 839736, at *1 (E.D. Tex. Mar. 27, 2008); *see also U.S. Steel Corp. v. United Mine Workers of America*, 526 F.2d 377, 377 (5th Cir. 1976) ("By using in their petition for rehearing unprofessional language lacking respect for the Court, counsel for petitioner has invited the Court to strike their petition."); *Hartfield v. Thaler*, 498 F. App'x. 440, 442 (5th Cir. 2012) (per curiam) (same); *Florance v. Bush*, No. 3:09-CV-1470-B-BH, 2010 WL 2710665, at *1 (N.D. Tex. June 24, 2010), *R. & R. adopted*, 2010 WL 2710596 (N.D. Tex. July 8, 2010); *Miller v. Grimberg*, No. 3:21-CV-03003-G-BT, 2023 WL 2825969, at *3 (N.D. Tex. Mar. 30, 2023), *R. & R. adopted*, 2023 WL 2842864 (N.D. Tex. Apr. 7, 2023).

Plaintiff is proceeding *pro se* and perhaps intends his actions, i.e., requesting a competency hearing when opposing counsel is attending a funeral, as legal bravado. Simply put, such a request is not within the decorum of court proceedings or common decency. Plaintiff clearly feels wronged, but his frustration should not lead to abusive language or conduct. At this time, the Court will not take any action towards Plaintiff for his behavior; however, Plaintiff is forewarned that future filings in this manner will not be interpreted as having been made in good faith or as a legitimate legal strategy.

Accordingly, the AutoNation CDJR Sanctions Motion (Dkt. 83) and the Motion to Strike (Dkt. 88) are denied.

## IV.    CONCLUSION

For the reasons stated above, the Sanctions Motions (Dkts. 74, 83) and the Motion to Strike (Dkt. 88) are **DENIED**.

So ORDERED and SIGNED this 14th day of September, 2023.

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE